LAW OFFICES OF

# KELLER ROHRBACK L.L.P.

| | | | |
|---|---|---|---|
| LAURIE B. ASHTON ① ④ ❸ ❹ | GLEN P. GARRISON ⑤ | DAVID R. MAJOR | AMY WILLIAMS-DERRY |
| IAN S. BIRK | LAURA R. GERBER | JOHN MELLEN ⑥ | MICHAEL WOERNER |
| STEPHEN R. BOATWRIGHT ① ❸ ❹ | GARY A. GOTTO ① ❸ ❹ | ROBERT S. OVER ⑦ ❶ | BENSON D. WONG |
| KAREN E. BOXX ❹ | MARK A. GRIFFIN | AMY PHILLIPS | |
| JOHN H. BRIGHT | AMY N.L. HANSON ❷ | LORRAINE LEWIS PHILLIPS | ① ADMITTED IN ARIZONA |
| GRETCHEN FREEMAN CAPPIO | IRENE M. HECHT | ERIN M. RILEY ❷ | ② ALSO ADMITTED IN ARIZONA |
| JASON P. CHUKAS | SCOTT C. HENDERSON | PAUL M. ROSNER | ③ ALSO ADMITTED IN CALIFORNIA |
| T. DAVID COPLEY ② | MICHAEL F. JOHNSON | DAVID J. RUSSELL | ④ ALSO ADMITTED IN COLORADO |
| ALICIA M. CORBETT ① ❸ ❹ | TOBIAS J. KAMMER | MARK D. SAMSON ① ❸ ❹ | ⑤ ALSO ADMITTED IN IDAHO |
| CLAIRE CORDON | RON KILGARD ① ❸ ❹ | LYNN LINCOLN SARKO ❶ ❷ | ⑥ ALSO ADMITTED IN ILLINOIS |
| SHANE P. CRAMER ② ❹ | BENJAMIN J. LANTZ | FREDERICK W. SCHOEPFLIN | ⑦ ALSO ADMITTED IN MARYLAND |
| ROB J. CRICHTON ⑩ | HEIDI LANTZ | WILLIAM C. SMART | ⑧ ALSO ADMITTED IN MICHIGAN |
| JULI FARRIS DESPER ③ ❶ | CARI CAMPEN LAUFENBERG | THOMAS A. STERKEN | ⑨ ALSO ADMITTED IN NEW YORK |
| MAUREEN M. FALECKI ③ | ELIZABETH A. LELAND | BRITT L. TINGLUM ❷ | ⑩ ALSO ADMITTED IN OREGON |
| RAYMOND J. FARROW | TANA LIN ⑥ ⑧ ❶ | LAURENCE R. WEATHERLY | ❶ ALSO ADMITTED IN WASHINGTON, D.C. |
| DANIEL S. FRIEDBERG ❷ ❹ | DEREK W. LOESER | MARGARET E. WETHERALD ⑩ | ❷ ALSO ADMITTED IN WISCONSIN |
| | | | ❸ NOT ADMITTED IN WASHINGTON |
| | | | ❹ OF COUNSEL |

November 3, 2006

***VIA ECF AND FEDERAL EXPRESS***

Judge J. Frederick Motz
USDC District of Maryland
Northern Division
4415 U.S. Courthouse
101 W. Lombard Street
Baltimore, MD  21201

Re:   *In re Mutual Funds Investment Litigation,* MDL Docket No.1586
      *In re Aim/INVESCO*, Civil No. 04-md-15864-01
      *Berdat, et al. v. Invesco Funds Group, Inc., et al.*, Dist. MD, No. 1:06-cv-01561-JFM

Dear Judge Motz:

      We write this letter on behalf of the plaintiffs in *Hunt, et al. v. Invesco* in reply to the letters filed by the Fund Derivative Plaintiffs and Defendants.  With all due respect to the Judicial Panel on Multidistrict Litigation ("the Panel"), the *Hunt* Plaintiffs believe that their case neither "arise[s] out of allegations of market timing and/or late trading in the mutual fund industry," June 16, 2006 Order in *In re Mutual Funds Investment Litig.*, MDL-1586, nor involves substantially similar discovery as the market timing and late trading cases, and the *Hunt* case should therefore be remanded to the Southern District of Texas.[1]

      As Alan Schulman, the Chair and Chief Administrative Counsel for the AIM track, pointed out during the October 11, 2006 telephonic status conference, the *Hunt* case is quite different from the market timing cases, does *not* substantially overlap with the market timing cases, and will actually result in *inefficiency* if combined into the market timing cases being litigated against the AIM Defendants.  Further, when I spoke with Mark Rifkin, counsel for the Fund Derivative Plaintiffs, a few months ago, Mr. Rifkin expressed concern about adding

---

[1] In the alternative, the *Hunt* Plaintiffs believe that a separate subtrack should be established for their case.

**REPLY TO:  1201 THIRD AVENUE   SUITE 3200   SEATTLE, WASHINGTON 98101-3052   TELEPHONE: (206) 623-1900   FAX: (206) 623-3384**
WWW.KELLERROHRBACK.COM

AFFILIATED OFFICE:  KELLER ROHRBACK PLC 3101 N. CENTRAL AVENUE, SUITE 900 PHOENIX, ARIZONA 85012  (602) 248-0088   FAX (602) 248-2822

**KELLER ROHRBACK L.L.P.**

Judge J. Frederick Motz
November 3, 2006
Page 2

another subtrack and suggested that remand was more appropriate. Thus, implicitly or explicitly, both plaintiffs' groups have acknowledged that the *Hunt* case ought to be remanded.

A.  The *Hunt* Case Differs From the Market Timing and Late Trading Cases

The Fund Derivative Plaintiffs' response is an unabashed attempt to expand their complaint beyond their market-timing/later trading-focused allegations and take control of our case. The essence of the *Hunt* action focuses on "whether 'defendants charge plaintiffs much higher fees than other clients for equivalent services'" (¶ 69) by examining factors such as economies of scale (¶¶ 71-80), the nature and quality of services provided to the funds (¶¶ 81-86), comparative fee structures (¶¶ 87-106), the profitability of the fund to the adviser/manager (¶¶ 107-109), fallout benefits (¶¶ 110-115), and the independence and conscientiousness of the directors (¶¶ 116-131). <u>Nowhere in the Fund Derivative Plaintiffs' almost 700 paragraph complaint do they discuss these factors, which are fundamental to a properly pled § 36(b) excessive fee complaint</u>. Defendants admitted the significance of this distinction when they previously argued that the *Hunt* action should not be consolidated with another action in Texas. *See* note 4, *infra*.

The Fund Derivative Plaintiffs' complaint, on the other hand, focuses on allegations related to market timing and late trading -- *not* the overarching structure by which the fees were approved and charged – the focus of the *Hunt* complaint. That the Fund Derivative Plaintiffs have an ICA § 36(b) claim in their complaint in no way makes the facts "inextricably intertwined." Asserting violations under the same statute does not suddenly make any two cases the same. Simply put, not all §36(b) cases are alike.

The Fund Derivative Plaintiffs now try to characterize their case as one that also challenges the overarching structure of the fees charged to the mutual fund. However, they selectively and misleadingly cite to their complaint in support of their newfound focus. For example, they cite ¶ 609 of the Second Consolidated Amended Fund Derivative Complaint ("SCAFD") in an effort to portray their claim as one of "failing to fully inform fund trustees of all material facts when seeking to renew their advisory and other contracts." Fund Derivative Plaintiffs' Response at 4. Noticeably, they make no mention of their claims in the paragraph immediately preceding ¶ 609 which assert: "*the nature and extent of market timing and late trading in the Funds, the nature and extent of capacity arrangements for market timing and late trading in the Funds, and the Adviser's permission, facilitation, or encouragement of and participation in, or failure to detect and prevent, market timing and late trading in the Funds, are particularly important to the Funds and to their independent Directors.*" SCAFD ¶ 608 (emphasis added). Nor did they bother to point out the portion of ¶ 609 which alleges that Defendants did not make full and fair disclosure of all information, addressing "*in particular the Adviser Defendants' permission, facilitation or encouragement of and participation in, or failure to detect and prevent, market timing and late trading.*" SCAFD ¶ 609 (emphasis added).

**KELLER ROHRBACK L.L.P.**

Judge J. Frederick Motz
November 3, 2006
Page 3

      Fund Derivative Plaintiffs also fail to point out that the Count I of their complaint (of which ¶ 609 is a part) further hones in on market timing and late trading:

> Each of the Adviser Defendants and the Distributor Defendants . . . breached his, her, or its fiduciary duty to the Funds by . . . facilitating, permitting, or encouraging, participating in, or failing to detect and prevent, market timing and late trading, all in exchange for their own benefit, including the receipt of "sticky assets" and other deposits on which they would and did receive fees and other compensation or by participating in insider timing themselves.
>
> By agreeing and/or conspiring with the market timers to facilitate, permit, or encourage, participate in, or by failing to detect and prevent, market timing and late trading, the Adviser Defendants and the Distributor Defendants placed their own self-interest in maximizing their compensation and other payments over the interests of the Funds.

SCAFD ¶¶ 613-614 (emphasis added).

      Fund Derivative Plaintiffs then attempt to broaden their case by leading the Court to believe that they generally alleged that "[b]y misrepresenting and concealing what they were doing from the boards, the advisers were able to obtain excessive, illicit and unearned fees from the investment companies," Fund Derivative Plaintiffs' Response at 4 (citing ¶ 12 of their complaint).  However, their complaint actually alleges::

> *The market timing and late trading scandal results from the substantial and unresolved conflicts of interest between mutual funds and the investment advisers who create and manage the funds. Those conflicts of interest have manifested themselves in widespread instances of improper market timing and late trading in the mutual funds, all to the detriment of the Funds.*
>
> The nature and extent of those conflicts of interest, *the market timing they led to*, and the adverse impact they caused to the Funds were not adequately disclosed to or understood by the Directors of the Funds, who approved or ratified the Fund adviser's management agreements

**KELLER ROHRBACK L.L.P.**

Judge J. Frederick Motz
November 3, 2006
Page 4


SCAFD ¶¶ 11 -12 (emphasis added).[2]  Thus, there is no question but that the § 36(b) excessive fee allegations in their complaint deal specifically with excessive fees <u>due to market timing and late trading</u> – which are the specific damages that the *Hunt* Plaintiffs are explicitly <u>not pursuing</u>.

Finally, the fund Derivative Plaintiffs' attempt to characterize their Rule 12b-1 distribution claims as similar to the *Hunt* action similarly fails.  As discussed above, ¶ 12 of their complaint focuses on market timing as does ¶ 88 of their complaint, which they cite in support of the similarity between the two complaints: "Distributors and other service agents who permitted timing *also benefited by receiving increased fees based on the money deposited in the mutual funds for market timing purposes.*"  SCAFD ¶ 88 (emphasis added).  The focus of the Fund Derivative Plaintiffs' 12b-1 claim is clearly on the "increased fees based on the money deposited into the mutual funds *for market timing purposes*" (emphasis added).

In contrast, the paragraphs of the *Hunt* complaint cited by Fund Derivative Plaintiffs demonstrate that their challenge is quite different – *i.e.*, their challenge is to the validity of the overarching structure of the 12b-1 fee in its entirety and have nothing to do with market timing or late trading:

> [T]he distribution fees are based on the net asset value of the Funds and not on the distribution activity, if any, by Defendants, such as number of shares sold.  Consequently, in addition to failing to benefit Plaintiffs and other shareholders, the Distribution Plans have extracted additional compensation for advisory services to Defendants, thereby resulting in excessive fees paid to them…
>
> Distribution fees have served only Defendants...As such, the distribution fees are entirely a waste of fund assets.  The wrongdoing is especially blatant in the case of the AIM Mid Cap Core Equity Fund, a mutual fund with limited fund offering that is not even selling shares to new individual investors and yet is charging 12b-1 fees when it is not possible for the fees to accomplish their chief purported purpose, i.e. growth through sales to new individual investors.

*Hunt* Complaint ¶¶ 64, 66.

---

[2] Fund Derivative Plaintiffs also cite to ¶ 522 of their complaint as purportedly relating to the lack of an independent board protecting the interests of the mutual funds and their shareholders, Fund Derivative Plaintiffs' Response at 4; however, their complaint states that "¶¶ 503-600 are intentionally left blank."  Accordingly, *Hunt* Plaintiffs cannot respond to this point.

**KELLER ROHRBACK L.L.P.**

Judge J. Frederick Motz
November 3, 2006
Page 5

      Even the Defendants see the Fund Derivative Plaintiffs' action and the *Hunt* action as different cases. In a document titled "Pending Litigation" on Defendants' website (Ex. 1),[3] they classify the Fund Derivative Plaintiffs' action as "Pending Litigation Alleging Market Timing" and describe the *Hunt* action in a different section entitled "Pending Litigation Alleging Excessive Advisory and/or Distribution Fees." *Compare* Pending Litigation Appendix A-1 with Appendix A-3.[4] This document is in accord with the fact that the *Hunt* case was being litigated for almost 22 months in Florida, then Texas, before the AIM Defendants notified the MDL panel of the case, leading to its transfer to the MDL.

      Try as they might, neither the Fund Derivative Plaintiffs nor the Defendants can turn the *Hunt* action into one arising out of market timing or late trading allegations. While curiously avoiding quoting from their own complaint, the Fund Derivative Plaintiffs had no problem quoting from the *Hunt* Plaintiffs' complaint and letter to the Court while completely misrepresenting the context of those quotations. The Fund Derivative Plaintiffs falsely assert that "the *first* nine paragraphs of substantive allegations in the Complaint under the heading 'Breaches of Fiduciary Duty by AIM and Invesco' relate to market timing." Fund Derivative Plaintiffs' Response at 2. They then go on to quote paragraphs 36, 37, and 43 of the *Hunt* complaint. This ignores the fact that the entire section "Breaches of Fiduciary Duty by AIM and Invesco" is in Section III(C) of the *Hunt* Complaint – *Section III is entitled "Background."*[5] The substantive allegations of the *Hunt* complaint begin at Section IV.[6]

---

[3] Also available at
https://www.aiminvestments.com/pdf/litigationpending_052506.pdf?contentGuid=ed7c992f64d6b010VgnVCM10000030b4bf0aRCRD.

[4] In arguing against the consolidation of the *Hunt* action with some other cases pending in the Southern District of Texas, Defendants distinguished the *Hunt* section 36(b) from others stating:

> The fundamentally different nature of the Papia and Berdat [now Hunt] claims is highlighted by contrasting the structure and substantive allegations of the complaint in those actions with those in the Boyce actions. Both the Papia (¶ 38) and Berdat (¶ 39) complaints [now SACC ¶ 70] allege that the relevant factors for proof of their claims: 'include (1) the nature and quality of the services rendered; (2) the profitability of the funds to the advisor/manager; (3) economies of scale; (4) comparative fee structures; (5) fallout benefits (i.e. indirect profits to the advisor/manager resulting from the existence of the funds; and (6) the care and conscientiousness of the directors. A review of these factors, and the facts in this case, demonstrates that the fees charged by Defendants to the Funds violate § 36(b).' In contrast, the complaints in the Boyce actions contain no allegations advocating such a focus on those six factors to prove their claims about allegedly improper directed brokerage business.

Defendants' Memorandum of Law in Partial Opposition to Plaintiffs' Motion for Consolidation for Pre-Trial Purposes at 8 (Att. 4 to *Hunt* Plaintiffs Aug. 8, 2006 Letter). Likewise, the Fund Derivative Plaintiffs' complaint contains "no allegations advocating such a focus on those six factors."

[5] Defendants claim that the *Hunt* complaint raises allegations of market timing "throughout the Second Amended Consolidated Complaint," Defendants' Response at 2, is spurious. Indeed, other than the background section of the complaint, they only point to a single paragraph, ¶ 85. *But see* Discussion in Section B, *infra*. Defendants also

**KELLER ROHRBACK L.L.P.**

Judge J. Frederick Motz
November 3, 2006
Page 6

Both Fund Derivative Plaintiffs and Defendants[7] try to create a mountain out of a molehill with their reference to ¶ 85 of the *Hunt* Complaint. A close examination of that paragraph (as well as the context within the totality of the *Hunt* Complaint) reveals that the focus in that paragraph is on conflicts "which do[] not exist in the case of the arms-length relationships *with institutional clients*" (emphasis added). No such claim (or anything remotely close) appears anywhere in Fund Derivative Plaintiffs' complaint. Again, the *Hunt* action centers on the overarching structure of the excessive management/administrative/distribution fees charged to the funds. The Fund Derivative Plaintiffs' action does not.

Regardless of Fund Derivative Plaintiffs' newfound claim that their complaint challenges the entire contract approval process, the allegations in their complaint prove that, to the contrary, their complaint is focused on market timing and late trading. The Court should not read into the Fund Derivative Plaintiffs' or the *Hunt* complaint what is not there. *Every single one of the Fund Derivative Plaintiffs' allegations is tied back to market timing and late trading activity*. The Fund Derivative Plaintiffs' complaint has hundreds of paragraphs discussing market timing and late trading and those who were involved in those activities. This is because that is what their case is about – market timing and late trading. Period.

B.     The *Hunt* Plaintiffs Do Not Seek Any Relief Related to Market Timing or Late Trading

The *Hunt* Complaint and the Fund Derivative Plaintiffs' Complaint seek very different damages. While the Fund Derivative Plaintiffs attempt to point at the catch-all language that is standard in the general prayers for relief section of complaints, Fund Derivative Plaintiffs' Response at 4, they again take the requests completely out of context. Those general prayers of relief must be read in the context of the allegations in the complaint. It would be nonsensical to read the general prayers for relief in a complaint without relating them to the claims in the complaint and expect damages to cover any misconduct under the sun whether alleged in the complaint or not; yet that is what the Fund Derivative Plaintiffs try to do. The damages sought in the *Hunt* Plaintiffs' complaint are related to the overarching structure of the management/

---

point out that the *Hunt* Plaintiffs attached the SEC order settling the market timing allegations – this was attached in the *background* section of the *Hunt* complaint.

[6] The Fund Derivative Plaintiffs' also attempt to impugn *Hunt* Plaintiffs' counsel by suggesting that they misled the Court by "go[ing] so far as quoting the Counts in their Complaint and adding at the end of each allegation of excessive fees the phrase 'and *not* because of any market timing related activity as alleged in the Counts of the Complaints in MDL-1586' when no such language appears in the Complaint." *Hunt* Plaintiffs are perplexed by the Fund Derivative Plaintiffs' attempts to cast *Hunt* counsel in a negative light when the *Hunt* Plaintiffs' letter specifically noted that any emphasis as well as any commentary in the parentheticals had been added. *Hunt* Plaintiffs' Letter of August 8, 2006 at 4.

[7] While Daniel Pollack did not participate in the October 11, 2006 status conference, counsel for Defendants clearly represented that Mr. Pollack was the defense counsel for the *Hunt* action. Mr. Pollack filed a response to the *Hunt* Plaintittfs' August 8, 2006 letter prior to the hearing, Aug. 9, 2006 Letter from Daniel A. Pollack (Ex. 2).

**KELLER ROHRBACK L.L.P.**

Judge J. Frederick Motz
November 3, 2006
Page 7

administrative/distribution fees charged by Defendants. **More importantly, the *Hunt* Plaintiffs specifically state in the "Nature of Relief Requested" section of their complaint that they "do not allege or seek relief for any claims based upon improper market timing or late trading activity involving the Funds."** *Hunt* Complaint, ¶ 47. As the Fund Derivative Plaintiffs' Complaint focuses on market timing and late trading, their relief cannot include damages unrelated to claims in their complaint. The Court should not read either of the complaints in a vacuum, as the Fund Derivative Plaintiffs' propose.

C.      The Transfer of the *Hunt* Action Will Not Result in Judicial Efficiency

While there may be some deponents who may be common between the two cases, this is very different than the question of whether there is overlap between the discovery sought from the deponents. It is important to keep in mind that the discovery sought from these individuals will *not* overlap given the extreme differences between the claims. Unlike the Fund Derivative Plaintiffs' case, discovery in the *Hunt* action will focus on excessive fees resulting from economies of scale and the lack of arms-length negotiations *in light of advisory fees Defendants charge their other clients* and *not* on fees resulting from market timing or late trading activities.

AIM's defense counsel in the *Hunt* case, Daniel Pollack, apparently believed there were significant enough differences between the *Hunt* case and the market timing case to file a motion to transfer the *Berdat* (now *Hunt*) action from Florida to Texas *after* MDL-1586 had commenced (citing how the funds and the pertinent witnesses were located in Texas). *See* Att. 3 to *Hunt* Plaintiff's Aug. 2, 2006 Letter.

To the extent there might be any slight overlap in discovery, there are suitable alternatives that will best accomplish the goals of Section 1407, making transfer unnecessary:

> Examples of suitable alternatives to best accomplish the goals of Section 1407 are as follows: the parties could agree, or any party may request from the district court…that discovery…be made applicable to [both cases]; the parties could seek to agree upon a stipulation that any further discovery relevant to any of the actions…may be used in all those actions; notices for a particular deposition could be filed in all relevant actions, thereby making the deposition applicable in each action; and any party could seek orders from the courts before whom the actions…are pending to direct the parties to coordinate their pretrial efforts whenever it is appropriate to do so.…Also, consultation and cooperation among the two concerned district courts, if viewed appropriate by those courts, coupled with the cooperation of the parties, would minimize the possibility of conflicting pretrial rulings.

**KELLER ROHRBACK L.L.P.**

Judge J. Frederick Motz
November 3, 2006
Page 8

*In re Petroleum Prods. Antitrust Litig.*, 476 F. Supp. 455, 458 (J.P.M.L. 1979) (citations omitted). *See also In re Chromated Copper Arsenate Treated Wood Prods. Liability Litig.*, 188 F. Supp. 2d 1380 (J.P.M.L. 2002); *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978); *In re Commercial Lighting Prods., Inc. Contract Litig.*, 415 F. Supp. 392, 393 (J.P.M.L. 1976). All these options are available in this situation, *if* the Court believes there might be some slight overlap in discovery.

Alternatively, the Court could order, or the *Hunt* Plaintiffs would be willing to stipulate, that the *Hunt* Plaintiffs will not seek any discovery of market timing or late trading upon remand to the Southern District of Texas.

D.      Settlement Negotiations

While Defendants raise the issue of settlement negotiations as a reason to keep the *Hunt* action in the MDL, none of the Defendants' counsel have contacted counsel for the *Hunt* Plaintiffs to discuss this. The *Hunt* Plaintiffs would, of course, be willing to explore with Defendants settlement of their excessive fee case. However, the parties can participate in settlement discussions without being caught up in the market timing MDL proceedings. Defendants' new expression of interest in having settlement discussions should have no bearing on the Court's consideration of the *Hunt* Plaintiffs' request for remand.

Sincerely,

/s/

Michael D. Woerner
Tana Lin

TL:eks
Enclosures

cc:     All counsel  (via ECF)